490

639 A.2d 904

**SOUDERTON AREA SCHOOL DISTRICT, Appellant,**

v.

**SOUDERTON AREA EDUCATION ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 1994.

Decided March 11, 1994.

Reargument Denied April 29, 1994.

Brian E. Subers, for appellant.

A. Martin Herring, for appellee.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Souderton Area School District (District) appeals from the order of the Montgomery County Court of Common Pleas which upheld an arbitrator's decision that teacher Susan Ashmore's grievance is arbitrable and concluded that the arbitrator's award draws its essence from the collective bargaining agreement (CBA).

Susan Ashmore had been employed as a teacher at Montgomery County Intermediate Unit No. 23 (I.U.) when she was transferred to the District pursuant to the Transfer Between Entities Act, 24 P.S. § 11–1113.[1] While the District credited

1. The Transfer Between Entities Act provides in pertinent part:

(a) When a program or class is transferred as a unit from one or more school entities to another school entity or entities, professional employes who were assigned to the class or program immediately prior to the transfer and are classified as teachers as defined in section 1141(1) and are suspended as a result of the transfer and who are properly certificated shall be offered employment in the program or class by the receiving entity or entities when services of a professional employe are needed to sustain the program or class transferred, as long as there is no suspended professional employe in the receiving entity who is properly certificated to fill the position in the transferred class or program.

Ashmore's years of service at the I.U., placing her on salary step 10 of the Master's Track, it did not recognize her years of service as a professional employee prior to her service at the I.U. Had the District given Ashmore the additional credit, she would have been placed on salary step 15 of the Master's Track, which would have entitled her to nearly $9,000.00 more a year in pay.

The Souderton Area Education Association (Association), which is the exclusive collective bargaining agent for the District's professional employees, filed a grievance on behalf of Ashmore. The grievance specifically stated:

> The Board of School Directors of the Souderton Area School District violated the terms and conditions of the collective bargaining agreement with the Souderton Area Education Association when it failed to place the grievant on the proper step of the salary schedule pursuant to Section 1113 of the Pennsylvania Public School Code. Grievant Susan Ashmore was placed on Step 10 Master's Track but should have been placed on Step 15, Master's Track.

The Association alleged that the specific articles which had been violated were Article VI, Compensation, Section A. Salary Schedule; Article VIII, Section B. Savings Clause. The CBA at issue between the parties was effective from September 1, 1990 through August 31, 1993.

The applicable CBA afforded a three-step grievance procedure where matters were subject to binding arbitration. Because Ashmore's grievance was denied at both Steps 1 and 2 and was subject to such arbitration, it was submitted to Step 3. The arbitrator decided that Ashmore's grievance was arbitrable because settling the issue involved "interpretation and application of the contract" and he further concluded that

(b) Transferred professional employes shall be credited by the receiving entity only for their sick leave accumulated in the sending entity and also for their years of service in the sending entity, the latter for purposes of sabbatical leave eligibility and placement in the salary schedule ... (footnote omitted)

24 P.S. § 11–1113(a) and (b).

she was entitled to full credit for her previous teaching service, placing her on salary step 15 of the Master's Track.

The District filed a petition for review with the common pleas court, which thereafter affirmed the arbitrator's award. This appeal followed.[2]

 The District first posits that Ashmore's grievance was not arbitrable and, therefore, this Court should vacate the arbitrator's award.. Our scope of review of arbitration awards is limited to determining whether the award draws its essence from the collective bargaining agreement or is manifestly unreasonable. *Austin Area Education Association, PSEA/ NEA v. Austin Area School District,* 159 Pa.Commonwealth Ct. 640, 643–644, 634 A.2d 276, 278 (1993). In reaching our decision, we cannot go beyond a determination of whether the award could be rationally derived from the collective bargaining agreement, viewed in light of its language and context, and any other indicia of the parties' intent. *Id.*[3]

In Article III, Section A. of the CBA, the word "grievance" is defined as follows:

A grievance is a claim based upon an event or condition which affects the conditions or circumstances under which a teacher works, allegedly caused by a misinterpretation or inequitable application of the terms of the contract.

In Article III, Section B., the contract further provides:

The parties to this agreement stipulate that an orderly and expeditious resolution of grievances is necessary.

1. Grievances which are subject to binding arbitration include:

a. Those grievances which require an interpretation and application of the contract.

**2.** The Pennsylvania State Education Association (PSEA) filed a brief to this Court as amicus curiae, supporting the Association's argument.

**3.** Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.903 states in part: "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."

b. It is understood, that in keeping with the limitation of Act 195, "any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted."

2. Grievances which are not subject to binding arbitration include:

a. Grievances which are not covered specifically in Section B, Item 1.

The District maintains that, because Ashmore's grievance did not require interpretation and application of the CBA, it was not arbitrable. In support of its argument, the District quotes Article VI, Compensation, Section A. Salary Schedule and Article VIII, Miscellaneous Provisions, Section B. Saving Clause. It was these sections which the Association alleged had been specifically violated by the District.

Article VI, Section A. provides:

Full time professional staff members in the employ of the Souderton Area School District during the term of this contract shall receive the salary indicated in the salary schedules which are attached hereto, made a part hereof and Exhibit "B".

Article VIII, Section B. affords:

The Board agrees that all economic benefits granted by Board regulation shall be in full force and effect for the duration of the contract.

According to the District, Article VI, Section A. does not consider the issue of placement on the salary schedule. In this vein, the District states that "[t]he mere inclusion of a salary schedule in a [CBA] does not in and of itself mean that the [CBA] specifies the manner in which employees are to be placed on that schedule." (Appellant's brief, p. 18). Moreover, while the District does concede that Article VI, Section B. concerns itself with placement, it stresses that it only does

so with regard to "horizontal" tracks rather than "vertical" steps.[4]

Furthermore, the District asserts that Article VIII, Section B. is irrelevant because there was no issue as to any economic benefits such as those contemplated in that section.

In short, the District argues that, since the CBA does not specifically discuss the issue of vertical placement on the salary schedule and, since the evidence failed to show that the District violated past practice in placing Ashmore, the arbitra-·tor needed to interpret the Transfer Between Entities Act rather than the CBA to arrive at his award. Therefore, the District claims, Ashmore's grievance is not arbitrable.

We stated in *Garnet Valley Service Personnel Association v. Garnet Valley School District,* 128 Pa.Commonwealth Ct. 182, 186, 563 A.2d 207, 209 (1989) that

[i]t is within the province of this Court to determine as a threshold issue whether the parties to the underlying dispute have agreed to submit that dispute to an arbitrator's jurisdiction. See *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462 A.2d 629 (1983). In Neshaminy, our Supreme Court addressed this issue as follows:

The policy of this Commonwealth not only favors but mandates the submission to arbitration of public employee grievances 'arising out of the interpretation of the provisions of a collective bargaining agreement.' The issue of the scope of the grievance arbitration procedure under a given agreement is determined, in the first instance, by the arbitrator. Nevertheless, whether or not a matter is properly within the jurisdiction of the arbitrator depends upon the intention of the parties as expressed in the terms of the agreement. As we noted in [*Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d

---

**4.** Horizontal placement refers to levels of placement by educational achievement (i.e. a Bachelor's degree vs. a Bachelor's Degree +12); vertical placement implicates different pay levels. *See Austin Area Education Association,* 159 Pa.Commonwealth Ct. at 642, n. 1, 634 A.2d at 277, n. 1.

1309 (1981) ], the question of the arbitrability of a particular dispute

> requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court. Id. 492 Pa. at 520–521, 424 A.2d at 1312–1313.

In the matter *sub judice,* the arbitrator concluded that, in order for the District to determine what salary Ashmore should get, it necessarily had to interpret and apply the CBA. Indeed, there can be no doubt, given Article VI, Sections A. and B. and the salary schedules which are attached to the CBA as Exhibit B, that the issue of salary schedule placement is contemplated by the contract. This is so even where the CBA does not expressly address the issue of salary based on vertical placement.

We reach this conclusion based on case law which has developed and is now cited to us. For example, in *Commonwealth of Pa. v. Joint Bargaining Committee of Pennsylvania Social Services Union, Local 668,* 84 Pa.Commonwealth Ct. 613, 480 A.2d 373 (1984), a class action grievance based on impermissible discrimination filed by the union was deemed arbitrable under the grievance clause where the CBA addressed, not the exact issue of discrimination in promotion, pay and seniority, but specifically discussed the various subjects of discrimination, affirmative action, promotion, pay and seniority. This Court also noted that "nowhere does [the CBA] expressly exclude arbitration of any question which the grievants raise." *Id.* at 617, 480 A.2d at 375.

As well, in *Carmichaels Area School District v. Carmichaels Area Education Association,* 37 Pa.Commonwealth Ct. 141, 389 A.2d 1203 (1978), we affirmed the arbitrator's conclusion that the grievance was arbitrable where "[t]he thrust of the grievance was directed to the effect of the shortened school year on the teacher salaries specified in the agree-

ment," *id.* at 146, 389 A.2d at 1206, even though the matter of scheduling the school calendar was in the District's discretion pursuant to statute and the CBA. *Id.* at 145, 389 A.2d at 1206.

As we said in *Shippensburg Area Education Association v. Shippensburg Area School District,* 42 Pa.Commonwealth Ct. 128, 133, 400 A.2d 1331, 1333 (1979):

Pennsylvania labor policy favors the submission to arbitration of public employee grievances, *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3, AFT, AFL–CIO,* 464 Pa. 92, 346 A.2d 35 (1975) and our Supreme Court has enunciated the principle that where "an arbitrator has interpreted a collective bargaining agreement in favor of the arbitrability of the grievance before him, a reviewing court should be slow indeed to disagree." [*County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 31–32, 381 A.2d 849, 851 (1977) ].

After examination of the record and the case law, we are convinced the arbitrator's decision that the issue of Ashmore's placement on the salary schedule was arbitrable must stand. Certainly, the issue of placement on a salary schedule was encompassed by the agreement. What is more, the CBA did not expressly exclude the issue of salary based on vertical as opposed to horizontal placement.

■ Next, the District asserts that, even if the grievance is arbitrable, the arbitrator's award is not rationally related to, nor does it draw its essence from, the CBA and, therefore, the award should be vacated. The District makes this claim because, in reaching his decision, the arbitrator had to interpret the language of the Transfer Between Entities Act.

Article VIII, Section A. Separability provides:

If any provision of this Agreement or any application of this Agreement to any employe or group of employes is held to be contrary to law, then such provision or application shall not be deemed valid and subsisting, except to the extent

permitted by law, but all other provisions or applications shall continue in full force and effect.

The arbitrator stated pursuant to this section that "[t]o determine whether any provision of the Contract is contrary to State statute, both the Contract and the applicable statute must be reviewed and interpreted. An examination of the [Transfer Between] Entities Act is implicitly allowed by the Contract." We agree.

In *Aliquippa Education Association v. School District of the Borough of Aliquippa*, 63 Pa.Commonwealth Ct. 91, 437 A.2d 1039 (1981), this Court reversed the common pleas court and sustained an arbitration award entered after the arbitrator interpreted the CBA's definition of a grievance and its statutory savings clause. We said:

> The common pleas court interpreted the third sentence of the statutory savings clause to indicate that the parties intended to keep rights granted by the agreement separate from rights granted by the School Code; although that interpretation is reasonable, it is no more reasonable than that adopted by the arbitrator, that such language was intended to incorporate statutory rights not specifically enumerated in the agreement.

> Consequently, we are convinced that the common pleas court erred by not deferring to the arbitrator's interpretation of the agreement.

*Id.* at 94, 437 A.2d at 1040.

We are not persuaded by the District's argument that this case requires a different result than that reached in *Aliquippa* because the separability clause herein does not incorporate the Transfer Between Entities Act or any other section of the Public School Code of 1949 (School Code)[5] into the agreement.

Here, the arbitrator interpreted Section (b) of the Transfer Between Entities Act to mean that Ashmore's previous years of service, previously credited by the I.U., should also be credited by the District. The arbitrator noted that the School

5. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

Code gave teachers *within the District* yearly salary increments based on each year of service, and that the CBA "places the teacher on steps implicitly equivalent to years of service as a teacher ..." The arbitrator also noted that "[t]he acceptance of an I.U. teacher into the Souderton School teaching group envelopes [sic] her with all the benefits of the current professional employees' agreement."

While the arbitrator could have reached other reasonable interpretations of the contract, we, of course, are faced with the reasonable interpretation he did reach.[6] We defer to that interpretation and affirm the arbitrator's award.

### ORDER

AND NOW, this 11th day of March, 1994, the order of the Court of Common Pleas of Montgomery County, No. 92–23698, dated June 7, 1993, is affirmed.

6. Moreover, Basic Education Circular # 15–91, issued by the Pennsylvania Department of Education and introduced at the arbitration by the Association, provided in pertinent part that "[t]he Department understands Section 1113 to mean that whatever credit for seniority or years of service was recognized by the sending entity, must also be recognized by the receiving entity." While the circular is not determinative, it is edifying.