701 A.2d 560

**P & R WELDING & FABRICATING and The Donegal Mutual Insurance Company, Appellees.**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Larry J. PERGOLA).**

**Appeal of Larry J. PERGOLA.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1996.

Decided Oct. 24, 1997.

Brooke M. Boyer, Reading, for Larry J. Pergola.

John C. Mascelli, Scranton, for P & R Welding.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The sole issue on appeal is whether the "gross method" or the "net method" should be utilized in calculating an employers'/workers' compensation insurers' subrogation rights and liabilities pursuant to Section 319 of the Workers' Compensation Act, 77 P.S. § 671, with respect to an employee's recovery in a third-party tort action. Because we hold that the gross method should be utilized in this situation, we affirm the order of the Commonwealth Court.

The relevant facts to this appeal are not in dispute. On July 28, 1985, appellant suffered a work-related back injury. As a result of this injury, appellant began receiving total disability benefits in the amount of $336 per week pursuant to a Notice of Compensation Payable dated December 20, 1985.

Appellant subsequently instituted a third-party tort action in relation to his injuries for which he was receiving disability benefits. On September 25, 1989, appellant settled the third-party tort action for $165,000. Appellant expended $55,000 in

counsel fees and $2,610.95 in costs ($57,610.95 in total) in order to obtain this settlement.

At the time of the settlement, P & R Welding & Fabricating and the Donegal Mutual Insurance Company (collectively, "Employer") had an accrued lien of $117,167.24, which represented the amount of workers' compensation benefits Employer had paid appellant up to the date of settlement. On November 7, 1989, Employer accepted a lump sum payment of $35,000 as settlement of its $117,167.24 accrued lien.[1] Thereafter, Employer paid appellant a reduced workers' compensation rate that varied between $112 and $235.30 per week.[2] Consequently, on August 3, 1990, appellant filed a Petition for Review claiming that Employer unilaterally altered appellant's weekly compensation rate without a judicial order.[3]

Based on this undisputed evidence, the Workers' Compensation Judge ("WCJ") determined that Employer owed appellant

1. Under existing case law, it is clear that an employer's settlement of its accrued lien for an amount less than the workers' compensation benefits already paid to the employee has no bearing in either calculating the balance of recovery or grace period under either the gross method or net method. *See CNA Insurance Co. v. Workmen's Compensation Appeal Board (Romeo)*, 134 Pa. Commw. 478, 578 A.2d 1375 (1990).

2. Specifically, the Workers' Compensation Judge found that:
   claimant received his compensation in accordance with the aforesaid compensation agreement from onset to November 19, 1989; thereafter defendant varied both the timing and the amounts of compensation paid in accordance with his exhibit introduced at the hearing and affixed hereto. Defendant paid claimant 7 weeks at $112.00 per week; 4 weeks at $112.00 per week; 15 weeks at $117.60 per week; 4 weeks at $117.60 per week; 6 weeks at 117.60 per week; 4 weeks at $117.60 per week; 4 weeks at $117.60 per week; 6 weeks at 117.60 per week; 4 weeks at $117.60 per week; 8 weeks at $117.50 per week; 8 weeks at $117.60 per week; then every 2 weeks at $235.20 per week for a period of 14 weeks; thereafter, every two weeks at $117.60 per week from September 13, 1991 to January 28, 1993; then from January 29, 1993 to February 22, 1993 (25 days at $48.00 per day according to compensation agreement) at $38.59 per day; and finally from February 12, 1993 to present, every 2 weeks at $117.60 per week.

3. On January 6, 1989, Employer filed a Termination Petition alleging that appellant had fully recovered from his work-related injuries. This petition was denied and is not part of this appeal.

$40,903.77 as its share of the legal fees appellant expended in obtaining the settlement in the third-party tort action.[4]  The WCJ then determined that appellant's net recovery from the third-party tort action was $31,125.57.[5]  The WCJ then held that since appellant's net recovery of $31,125.57 was less that Employer's accrued lien of $117,167.25, Employer was not entitled to any credits for future workers' compensation payments.  On December 9, 1994, the Workers' Compensation Appeal Board ("Board") affirmed the WCJ's decision.

Employer then timely appealed to the Commonwealth Court.  The Commonwealth Court, in a published opinion and order, reversed the Board and WCJ's determination that Employer was not entitled to any credits for future workers' compensation benefits.  In doing so, the Commonwealth Court determined that the Board and WCJ did not utilize the correct method in calculating whether Employer was entitled to any credits for future workers' compensation benefits.  Instead, the Commonwealth Court held that the correct method for calculating Employer's subrogation rights and liabilities was the "gross method."[6]  Thus, the Commonwealth Court re-

4.  The WCJ arrived at the amount Employer owed appellant in legal fees by first dividing Employer's accrued lien of $117,167.25 by the total recovery of $165,000, which equals approximately 71%. The WCJ then arrived at the $40,903.77 figure by multiplying the total legal fees of $57,610.95 by 71%.

5.  The WCJ arrived at this net recovery figure by first determining the remaining legal fees which appellant was owed. The WCJ arrived at this figure of $16,707.18 by subtracting the amount it previously determined Employer owed appellant for legal fees, $40,903.77, from the total legal fees of $57,610.95. The WCJ then subtracted the remaining legal fees of $16,707.18 and the accrued lien of $117,167.25 from the total recovery of $165,000, to equal the net recovery of $31,125.57.

6.  We note that the WCJ also determined that Employer owed appellant $38,943.40 in past due workers' compensation payments plus $226.20 more per week in future compensation. The WCJ also determined that Employer violated the Workers' Compensation Act by altering appellant's benefits without a judicial order. Thus, the WCJ imposed a 20% penalty on the $38,943.40 in past due compensation plus $226.20 per week benefits and 10% interest on all late payments. The WCJ also ordered Employer to pay counsel fees in the amount of 20% of all compensation due for an unreasonable contest in this action. These awards, however, were ultimately reversed by the Commonwealth Court and are not a part of this appeal.

manded the matter to the Board for a calculation using the gross method. Appellant then filed a timely petition for allowance of appeal. This Court granted *allocatur* in order to determine whether the gross or net methodology is to be utilized in determining employers'/insurers' subrogation rights and liabilities pursuant to Section 319 of the Workers' Compensation Act where an employee recovers in a third-party tort action.[7]

■ An employer who pays compensation is subrogated to the right of the employee against a third-party tortfeasor. *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Mass)*, 506 Pa. 592, 596, 487 A.2d 794, 796 (1985). Section 319 of the Workers' Compensation Act provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and the employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of attorney's fees and proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and

7. Appellant's petition for allowance of appeal also alleged that the Commonwealth Court erred by reversing the WCJ's grant of $40,903.77 to appellant as Employer's share of legal fees. Appellant claimed that the Commonwealth Court exceeded its scope of review because Employer failed to raise the issue on appeal. This Court rejected that claim and limited the grant of *allocatur* to the methodology issue only.

shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671.

Appellant argues that Section 319 requires the use of the net method when calculating an employer's subrogation rights and liabilities in relation to a third-party settlement. Under the net method, the employer's accrued lien and all legal costs of obtaining the settlement are deducted from the total recovery for purposes of determining the amount of the employer's credit for future installments. The amount available for future credits is referred to as the "balance of recovery." The balance of recovery is then divided by the weekly compensation rate being paid to the workers' compensation claimant in order to arrive at what is known as a "grace period." The grace period is the number of weeks in the future for which the employer does not have to pay claimant workers' compensation benefits.[8]

Employer, however, argues that Section 319 requires the usage of the gross method when determining an employer's subrogation rights and liabilities in a third-party settlement. Under the gross method, any balance of recovery is determined by deducting the employer's accrued lien from the total recovery. When the claimant's recovery in the third-party action provides the employer with repayment of its accrued lien, the employer must reimburse the claimant for the claimant's proportionate share of the costs expended to recover that amount. The remaining legal expenses are attributable to the balance of recovery. Next, one calculates the credit or grace period due to the employer. In doing this, the balance of

---

**8.** Using the figures in this case, the net method would render the following result:

| Total Recovery | $165,000.00 |
|---|---|
| less: accrued lien | 117,167.25 |
| less: legal costs of obtaining settlement | 57,610.95 |
| Balance of Recovery | - |
| | $ 9,778.20 |

Since the net method would result in a negative balance of recovery, Employer would not be entitled to a grace period in which it would not have to make future workers' compensation payments to appellant.

recovery is divided by the weekly compensation rate being paid to the employee. Finally, the expenses attributable to the balance of recovery are divided by the number of weeks in the grace period in order to determine the amount of legal expenses to be paid by the employer to the claimant in installments each week during the grace period.[9]

It is clear that the main difference between the net method and the gross method are how the legal expenses associated with the recovery or settlement are treated in arriving at the balance of recovery to be used in determining whether the employer is entitled to a grace period. Under the net method, all legal costs associated with the recovery, as well as the

9. **Using** the figures in this case, the gross method would render the following result:

| | | |
|---|---|---|
| (1) Total Recovery | $165,000.00 | |
| less: accrued lien | 117,167.25 | (71% of Total Recovery) |
| Balance of Recovery | $ 47,832.75 | (29% of Total Recovery) |
| (2) Total expenses | $ 57,610.95 | |
| Expenses attributed to accrued lien | 40,903.77 | (71% of Total expenses) |
| Expenses attributed to balance of recovery | 16,707.18 | (29% of Total expenses) |
| (3) Accrued Lien | $117,167.25 | |
| less: expenses attributed to accrued lien | 40,903.77 | (71% of legal expenses of $57,-610.95) |
| Net Lien (satisfied by $35,000) | $ 76,263.48 | |
| (4) Balance of Recovery | $ 47,832.75 | |
| divided by weekly compensation rate | 336.00 | |
| Grace Period | 142 | weeks |
| (5) Legal Expenses attributed to balance of recovery | $ 16,707.18 | |
| divided by grace period | 142 | weeks |
| Reimbursement of Expenses attributed to Balance of Recovery | $ 117.66 | per week |

Thus, under the gross method, Employer would receive a grace period of 142 weeks during which it would not have to make any future workers' compensation payments to appellant. Employer, however, would have to pay appellant $117.66 per week during the 142 week grace period in order to reimburse appellant for the legal expenses attributable to the grace period.

accrued lien, are deducted from the total recovery for purposes of determining the amount available as future credit. The gross method, however, pro-rates the legal fees as the employer receives the benefit of the grace period. The main difference is that under the net method, the employer receives a shorter grace period, but correspondingly, the employer has no obligation to repay legal expenses during that grace period.

Our determination of which method is the correct method for determining an employer's subrogation rights and liabilities under Section 319 of the Workers' Compensation Act depends on an analysis of the controlling statutory language. When determining whether Section 319 of the Workers' Compensation Act mandates the usage of the net method or gross method, we are guided by the Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). Also, if possible, the statute must be construed to give effect to all of its provisions. *Id.* Moreover, statutes, or parts of statutes must be read *in pari materia* when they relate to the same class of persons or things. 1 Pa.C.S. § 1932.

Initially, we note the parties agree that Section 319 entitles an employer who pays workers' compensation benefits to have his rights subrogated to the employee's rights against third party tortfeasors "to the extent of compensation payable . . . by the employer." 77 P.S. § 671. The parties also agree that an employer's settlement of its accrued lien, including legal fees, for an amount less than the amount of the accrued lien (here, a $35,000 settlement of a $117,167.24 accrued lien) does not affect the calculation of the balance of recovery or grace period.

The dispute between the parties arises over when and how the legal expenses are to be allocated between the employer and employee. Section 319 requires that "reasonable . . . fees and other proper disbursements incurred in obtaining a recovery or . . . settlement shall be pro-rated" between the employer and employee. Section 319 then mandates that this pro-rated rule for legal expenses first be applied to the "accrued

lien," the amount of workers' compensation paid by the employer to the employee up to the time of recovery. As to that, Section 319 provides that:

> The employer shall pay the proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.

77 P.S. 671. The plain meaning of this language is that when the employee's recovery in a third-party action provides the employer with repayment of its accrued lien, the employer must at the same time reimburse the employee for the proportionate share of the legal expenses expended to recover that amount.

The dispute then turns to the treatment of legal expenses when calculating the balance of recovery eligible for credits against future workers' compensation payments the employer must make to the employee. Section 319 provides that:

> Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future installments of compensation.

Clearly, the plain meaning of this language is that a future credit is given to the employer for the amount that the recovery (here, $165,000) exceeds the accrued lien (here, $117,-167.24). The language of this provision is utterly devoid of any deduction for legal fees being made when calculating the amount of future credits to which the employer is entitled.

Instead, the legal expenses attributable to the future credits (i.e., the amount of legal expenses which were not previously attributable to the employer's accrued lien) must be prorated as the employer becomes entitled to the future credit received. We arrive at this conclusion because as stated above, Section 319 mandates that the legal expenses be pro-rated between the employer and the employee. Since the legal expenses and future credits portion of Section 319 must be read *in pari materia,* we conclude that Section 319 requires that the em-

ployer only needs to reimburse the employee for legal expenses as the employer receives the benefit of the recovery or settlement. Thus, the employer, in connection with each week of the grace period, must reimburse to the employee the amount of legal costs attributable to that week of the grace period. Therefore, when the above interpretations surrounding the many facets of Section 319 are combined, we conclude that it describes what is referred to as the gross method for determining an employer's subrogation rights and liabilities with respect to an employee's recovery in a third-party action.[10]

■ We find further support for this conclusion by looking to the interpretation of the agency administering the statute in question. While questions of statutory construction are for the courts' determination, appropriate weight will be given to the interpretation of the agency administering the statute in question. *Allegheny Intermediate Unit # 3 Education Association v. Bethel Park School District,* 545 Pa. 78, 84, 680 A.2d 827, 829–30 (1996). Here, the Workers' Compensation Act empowers the Pennsylvania Department of Labor and Industry to provide rules and regulations to ensure its orderly administration. 77 P.S. § 991. In that regard, Section 121.18 of Title 34 of the Pennsylvania Code provides that:

(a) In the event of third party recovery under Section 319 of the Workers' Compensation Act (77 P.S. § 671), Third Party Settlement Agreement, Form OIDC–380, shall be executed by parties thereon.

**10.** Appellant argues that this Court's opinion in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Mass),* 506 Pa. 592, 596, 487 A.2d 794, 796 (1985) supports his contention that Section 319 mandates the usage of the net method. As the Commonwealth Court in this case noted, the parties in *Rollins* did not preserve any question relating to the methodology used in calculating the grace period during which the employer would not have to pay future workers' compensation benefits to the employee. Instead, *Rollins* primarily involved the validity of a subrogation agreement between the parties in which the employer accepted $10,000 in settlement of its accrued lien in return for a promise that the employee would forego future workers' compensation benefits.

(b) If a credit is requested against future compensation payable, Supplemental Agreement Form LIBC–337, shall also be filed with the Department of Labor and Industry indicating the amount and periodic method of *pro rata* reimbursement of attorney fees and expenses.

34 Pa.Code § 121.18(b) (Subrogation procedure). As the Commonwealth Court noted in *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 155 Pa. Commw. 440, 447, 625 A.2d 187, 191 (1993), the form prescribed by the Code provides the computations known as the gross method. We conclude that the interpretation of the methodology of Section 319 by the Department of Labor and Industry is a reasonable one and is in accord with our understanding of the intent of the General Assembly as evidenced by the word choice in that section. Therefore, based on the above, we conclude that Section 319 mandates the use of the gross method when determining an employer's subrogation rights and liabilities with respect to an employee's recovery or settlement of a third party action.

A review of the record in this case shows that the Commonwealth Court applied the gross method when determining Employer's subrogation rights under Section 319 with respect to appellant's settlement of a third party tort action. Accordingly, since the Commonwealth Court applied the correct formula to arrive at the correct grace period for Employer (See footnote 8 *supra* for this calculation), we affirm the order of the Commonwealth Court.

NEWMAN, J., did not participate in the consideration or decision of this case.